IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| SHIRLEY C. BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV49 |
| | ) | |
| NATIONWIDE MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This insurance dispute comes before the Court on a Motion for Partial Summary Judgment filed by Plaintiff Shirley Brown [Doc. #17] and a Cross-Motion for Summary Judgment filed by Defendant Nationwide Mutual Fire Insurance Company ("Nationwide" or "Defendant Nationwide") [Doc. #18]. This action has been referred to the undersigned to conduct all proceedings pursuant to 28 U.S.C. § 636(c) [Doc. #24]. For the reasons set out below, the Court will set this matter for a hearing and for a final pretrial conference on February 19, 2015 at 9:30 a.m.

I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

In this case, Plaintiff asserts claims for unfair and deceptive trade practices and bad faith refusal to settle an insurance claim. These claims arise out of an automobile accident that occurred on May 28, 2007, in Guilford County, North Carolina, involving a vehicle driven by Plaintiff and a vehicle driven by Mr. Jonathan Drinkard. Plaintiff suffered bodily injury in the accident. At the time of the accident, Plaintiff had underinsured motorist coverage with

Defendant Nationwide of $100,000, and the vehicle driven by Mr. Drinkard was covered by an insurance policy issued by Defendant Nationwide with liability limits of $30,000.

On April 14, 2010, Plaintiff Brown filed a tort action against Mr. Drinkard in Guilford County Superior Court seeking damages for personal injury. In his Answer, Mr. Drinkard admitted negligence in failing to keep a proper lookout, but denied proximately causing Plaintiff Brown's injuries. The parties engaged in discovery during 2010 leading up to a mediation proceeding held on December 2, 2010. In the present suit, Plaintiff contends that Defendant committed unfair and deceptive insurance practices and bad faith refusal to settle, based on Defendant's conduct at and immediately after that December 2, 2010 mediation. Although that mediation was set with respect to Plaintiff's liability claim, it is undisputed that Defendant's agent was also there to at least "monitor" the underinsured claim, and Defendant expressed a willingness at the mediation to settle both the liability claim and the underinsured claim for $45,000. In addition, Defendant's agent testified at his deposition that if Defendant had no underinsured coverage at issue, Defendant would have settled for the $30,000 policy limits. (Swann Dep. at 12 [Doc. #17-4].) After the December 2, 2010 mediation, Defendant requested additional documents and records from Plaintiff. Plaintiff then filed the present suit, alleging unfair and deceptive trade practices and bad faith refusal to settle. Defendant subsequently tendered the $30,000 liability limits on Mr. Drinkard's policy on December 21, 2010, nineteen days after the mediation. Defendant contends that it tendered the limits after receiving the additional requested medical records; Plaintiff contends that the document requests were harassment designed to force Plaintiff to settle the liability and underinsured claims together for

a lesser amount, and that the liability policy limits were only tendered as a result of her filing the present suit.

After Defendant tendered the policy limits on the liability policy, the parties proceeded to arbitration as to the underinsured claim, and Plaintiff was ultimately awarded $82,500, representing the $30,000 in liability limits already paid by Defendant Nationwide and $52,500 in underinsured motorist coverage under Plaintiff's automobile insurance policy with Defendant Nationwide. Defendant Nationwide has paid the arbitration award.

Plaintiff filed her Complaint in the present action in Guilford County state court and Defendant Nationwide removed the action to this Court on the basis of diversity-of-citizenship jurisdiction. Plaintiff's First Claim for Relief is for Unfair and Deceptive Trade Practices pursuant to North Carolina General Statutes § 75-1.1(a), based on alleged violations of North Carolina General Statutes § 58-63-15(11)(f), (h), & (m), and based on alleged refusal to promptly settle the liability claim after liability was reasonably clear, in order to influence settlement negotiations on the underinsured claim. (Compl. at 3.)[1] She charges a violation of Section 58-63-15(11)(f) by failing to attempt good faith efforts to effectuate prompt, fair, and equitable settlement, a violation of Section 58-63-15(11)(h) by attempting to settle a claim for less than the

---

[1] To establish an unfair or deceptive trade practice in violation of Section 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused injury to the plaintiff. Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). A practice is considered unfair and deceptive if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Id. Moreover, "where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice." Id. In addition, N.C. Gen. Stat. § 58-63-15 defines unfair methods of competition and unfair or deceptive acts or practices in the insurance industry and enumerates a list of unfair claim settlement practices. North Carolina courts have held that a violation of N.G. Gen. Stat. § 58-63-15(11) also constitutes an unfair and deceptive trade practice in violation of § 75-1.1 as a matter of law. Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 10 (1996).

amount to which a reasonable man would have believed he was entitled, and a violation of Section 58-63-15(11)(m) by failing to promptly settle claims where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. Plaintiff's Second Claim for Relief is that "Defendant committed tort[i]ous and bad-faith breach of contract during its dealings with the Plaintiff" by refusing to settle the primary liability claim in an effort to coerce Plaintiff to settle the primary liability claim and the underinsured claim together without the use of arbitration on the underinsured claim.[2] Plaintiff seeks damages, attorney's fees, and costs as relief.

Plaintiff seeks summary judgment only on her bad faith claim, contending that the evidence establishes a bad faith refusal to settle as a matter of law. Defendant seeks summary judgment on both claims against it. Defendant argues (1) that Plaintiff cannot rely upon the statements or conduct that occurred at mediation as evidence of liability due to the confidential nature of mediation pursuant to N.C. Gen. Stat. § 7A-38.1(l); (2) that there is no cause of action for third-party bad faith or unfair and deceptive trade practices under North Carolina law; (3) that Plaintiff has failed to create a genuine issue of material fact on her claims; and (4) that

---

[2] In order to recover punitive damages for an insurance company's bad faith refusal to settle, Plaintiff must establish: (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct. Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 420 (1993) (citing Michael v. Metropolitan Life Ins. Co., 631 F.Supp. 451, 455 (W.D.N.C. 1986); Robinson v. North Carolina Farm Bureau Ins. Co., 86 N.C. App. 44, 49-50 (1987) (noting that an action for punitive damages for tortious conduct is not necessarily precluded when the company eventually pays, if bad faith delay and aggravating conduct is present); Lovell, 108 N.C. App. at 421 (finding that evidence tending to establish that an insurer intended to "wear down" its insured in order to influence settlement of the liability claim was sufficient to withstand a motion for a directed verdict on a bad faith claim).

4

Plaintiff has not presented evidence of any damages. The Court will consider each of these contentions in turn.

II.     DISCUSSION

    A.     Summary Judgment Standard

Summary judgment is appropriate only when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

    B.     Admissibility of Conduct Occurring at Mediation

Defendant first contends that under North Carolina General Statute § 7A-38.1(l), statements and conduct that occurred during the court-ordered mediation are inadmissible to support the Plaintiff's claims. Section 7A-38.1(l) provides that:

> Evidence of statements made and conduct occurring in a mediated settlement conference or other settlement proceeding conducted under this section, whether attributable to a party, the mediator, other neutral, or a neutral observer present at the settlement proceeding, shall not be subject to discovery and shall be

inadmissible in any proceeding in the action or other civil actions on the same claim[.]

N.C. Gen. Stat. § 7A-38.1(l)(2010).

Defendant argues that under a plain reading of the statute, statements and conduct during the mediation are inadmissible to support the Plaintiff's claims. Defendant cites <u>Few v. Hammack Enters., Inc.</u>, 132 N.C. App. 291, 296 (1999), to support this contention. However, in <u>Few</u>, the court held that Section 7A-38.1(l) "does not prohibit the admission of the outcome of a mediated settlement conference before a judge making the determination of whether settlement was reached and of the terms of that settlement." <u>Id.</u> The court reasoned that Section 7A-38.1(l) was "enacted to prevent a chilling effect on settlement negotiations by allowing parties to freely make settlement offers without fear that those offers would be revealed to a subsequent finder of fact as some evidence of liability on either the present or a future substantive claim." <u>Few v. Hammack Enters., Inc.</u>, 132 N.C. App. at 296. Consistent with this purpose, the statute includes a general prohibition against the admission of statements made during a court-ordered mediation. However, under a plain reading of Section 7A-38.1(l), the statute only bars the admission of such evidence "in any proceeding in the action or other civil actions on the *same* claim." N.C. Gen. Stat. § 7A-38.1(l)(2010) (emphasis added); <u>see also Breedlove ex rel. Howard v. Aerotrim, U.S.A., Inc.</u>, 142 N.C. App. 447, 454-55 (2001) (noting that Section 7A-38.1(l) does "not prohibit the presentation of evidence of statements made in compromise negotiations, if offered for some other purpose"); <u>Renner v. Hawk</u>, 125 N.C. App. 483, 493 (1997) ("Assuming, arguendo, that all of the statements in question were made in the course of compromise negotiations, the evidence was not offered to prove liability for or

6

invalidity of the claim or its amount. . . . Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule." (internal quotations omitted)).

In this case, the underlying action that was the subject of the mediation involved a negligence claim against Mr. Drinkard. In contrast, the present action is a separate civil action proceeding on two substantively different claims against Defendant Nationwide. The evidence is offered for "other purposes" in order to establish bad faith and unfair and deceptive trade practices on those separate claims. In the circumstances, a plain reading of Section 7A-38.1(l) demonstrates that it does not affect the admission in this case of statements made and conduct occurring during the mediation in the prior state case against Mr. Drinkard.[3]

### C. Third Party Claims

Defendant contends that Plaintiff cannot bring a claim for unfair and deceptive trade practices or bad faith failure to settle regarding Defendant's failure to settle the $30,000 liability claim because as to that claim, Plaintiff is considered an adverse party to Defendant Nationwide, since Defendant Nationwide owes its duty of good faith to its insured on that claim, Mr. Drinkard, and not to Plaintiff. In Wilson v. Wilson, 121 N.C. App. 662, 665 (1996), the court

---

[3] Moreover, the Court notes that Federal Rule of Evidence 408, not addressed by the parties, provides that conduct or statements made during compromise negotiations are not admissible to "prove or disprove the validity or amount of a disputed claim or to impeach," but such evidence is admissible for other purposes. See Fed. R. Civ. P. 408 and 2006 cmte. notes (citing Athey v. Farmers Ins. Exch., 234 F.3d 357 (8th Cir. 2000), for the proposition that "evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith"); see also Wright & Miller, Fed. Prac. & Proc. § 5314 ("Hence, if an insurer is sued for having breached its obligations under an indemnity policy by failing to make a reasonable settlement within policy limits, Rule 408 does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations."). Because the result is the same under both federal and state rules, the Court need not resolve *sua sponte* the extent to which the state rule applies in this federal action.

7

held that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1." A plaintiff must therefore be an insured or in privity with the insurer to assert a private right of action under N.C. Gen. Stat. § 58-63-15 and N.C. Gen. Stat. § 75-1.1. Id. at 665. The court's reasoning was two-fold. First, "allowing such third-party suits against insurers would encourage unwarranted settlement demands, since plaintiffs would be able to threaten a claim for an alleged violation of N.C.G.S. § 58-63-15 in an attempt to extract a settlement offer." Id. at 666. Further, "allowing a third-party claim against the insurer of an adverse party for violating N.C.G.S. § 58-63-15 may result in a conflict of interest for the insurance company." Id. at 667. This is because "upon defending its insured, the insurer has a duty to act diligently and in good faith to its insured" and "to safeguard the interests of its insured," but allowing a third-party action "would require the insurer to also act in the best interests of the party adverse to its insured." Id.

However, an insurer nevertheless owes a duty to its insured with respect to an underinsured policy. See Murray v. Nationwide Mutual Ins. Co., 123 N.C. App. 1 (1996) (concluding that the plaintiff had stated a claim against the UIM carrier for unfair and deceptive practices); Miller v. Nationwide Mut. Ins. Co., 112 N.C. App. 295, 301 (1993) (holding that a plaintiff may state a claim for unfair trade practices based on alleged refusal of the insurer to pay UIM coverage and the insurer's withholding of a UIM payment after the insurer had sufficient information to determine that UIM would be due and payable). This is because "North Carolina courts hold uninsured motorist policies to the same standards set forth in Section 58-63-15(11)

8

as other policies." Chew v. Progressive Universal Ins. Co., No. 5:09-cv-351-FL, 2010 WL 4338352, at *9 (E.D.N.C. Oct. 25, 2010); see also Weese v. Nationwide Ins. Co., 879 F.2d 115, 118 (4th Cir. 1989) (applying West Virginia law) (holding that the Court will hold an uninsured motorist insurer to its contractual obligations of fair dealing in settlement negotiations, despite the parties' adversarial posture).

In reconciling these doctrines, the District of Colorado has held as follows:

> The duty of good faith and fair dealing is implied in every insurance policy and is based upon the special relationship between the insurer and the insured. Thus, the duty does not extend to injured third-party claimants. When both the tortfeasor and the injured party are insured by the same insurer, however, the question whether the insurer owes a duty of good faith and fair dealing to the injured party becomes more difficult. Nevertheless, courts almost universally hold that the insurer does not owe such a duty to the injured party when she asserts a third-party claim against the tortfeasor. To hold otherwise places the insurer in the untenable position of owing a duty of good faith to both the insured tortfeasor and his adversary.
>
> [In this case, the plaintiff] has asserted a third-party claim against [the tortfeasor]; thus, I conclude that Farmers did not owe her a duty of good faith and fair dealing with respect to that claim. However, [the plaintiff] also has asserted a first-party UIM claim. Farmers did owe [the plaintiff] a duty of good faith and fair dealing in its handling of that claim. [The plaintiff's] allegations of bad faith relate at least in part to Farmers' handling of her UIM claim. Accordingly, Farmers' motion for summary judgment on the ground that it did not owe [the plaintiff] a duty of good faith and fair dealing will be denied as to this aspect of the case.

Galusha v. Farmers Ins. Exch., 844 F. Supp. 1401, 1403-04 (D. Colo. 1994) (internal citations omitted); see also Myers v. State Farm Mut. Auto. Ins. Co., 950 F. Supp. 148, 151 (D.S.C. 1997) (denying motion to dismiss bad faith claims based on insurer's conduct relating to underinsured coverage, and noting that "the insured's carrier has the duty to act in good faith toward, and deal

9

fairly with, its insured by investigating and processing the underinsurance claim"); Herrig v. Herrig, 844 P.2d 487, 491 (Wyo. 1992).

Therefore, in this case, Plaintiff may not bring a third-party claim based on Defendant's conduct in its role as insurer of the vehicle driven by Mr. Drinkard. However, Defendant still owed Plaintiff a duty of good faith and fair dealing in handling her UIM claim and, as a result, Plaintiff may bring a cause of action against Defendant in its capacity as her UIM insurer. To the extent the claims in this case are based on Defendant's actions between December 2 and December 21, 2010, there is evidence that Defendant was at that time acting in its capacity as Plaintiff's UIM insurer, based on Defendant's concession that its agent at the mediation was also there to "monitor" the UIM claim, that Defendant's agent agreed to a settlement figure that included settlement of the UIM claim, and that Defendant's agent later conceded that he would have settled the liability claim for the policy limits if Defendant did not have the UIM interest at stake. Therefore, the Court cannot conclude as a matter of law that Plaintiff cannot state a claim against Defendant, to the extent that Defendant was acting in its capacity as her UIM insurer.

D.   Issues of Material Fact

Defendant next contends that Plaintiff has failed to present evidence of bad faith or unfair or deceptive practices because Defendant paid the liability limits and proceeded to arbitration on the UIM claim as soon as Plaintiff provided all of the requested medical records. Plaintiff in turn contends that she is entitled to judgment in her favor because the evidence establishes that Defendant refused to pay the liability claim in an effort to obstruct her ability

to proceed on the UIM claim, and then only agreed to pay the liability claim and allow the UIM claim to proceed when the present suit was filed.

Having considered the parties' contentions and the evidence presented, the Court finds that there are genuine issues of material fact in this case, as the evidence presented would support a finding for either party on this issue. Specifically, the evidence would support a conclusion that in valuing Plaintiff's claims, Defendant had legitimate questions regarding a pre-existing injury, and those questions were not resolved until the relevant medical records were provided. Correspondence between the parties shows that Defendant Nationwide received additional medical records between December 8, 2010, and December 21, 2010. Defendant Nationwide tendered to Plaintiff the limits of Mr. Drinkard's liability policy on December 21, 2010, shortly after receiving the medical records. Under this version of the facts, Plaintiff has not shown bad faith or unfair and deceptive trade practices. However, the evidence would also support the conclusion that Defendant had received the requisite medical information before or during the mediation on December 2, 2010, that Defendant valued the claim at over $30,000 by that time, that Defendant would have paid the liability policy limits if it were not also the UIM carrier, that Defendant's efforts to force Plaintiff to provide additional records, including records that had already been provided, reflected an effort to delay payment of the liability policy and force Plaintiff to settle the UIM policy without arbitration, and that Defendant only paid the liability policy limits and proceeded to arbitration on the UIM claim after the present suit was filed. Thus, the evidence would support a finding in favor of either party on this issue. In the

circumstances, the Court cannot conclude that either party has established a lack of genuine issue of material facts.

E.   Damages

Finally, Defendant contends that Plaintiff has not shown that she was injured or that the injury was proximately caused by any of the alleged unfair or deceptive trade practices.  In her Response [Doc. #22, at 5], Plaintiff argues only that her "contractual rights were deprived because of Defendant's conduct."  However, to the extent that Plaintiff is referring to her right to proceed to arbitration on her UIM claim, Defendant contends that Plaintiff did not suffer any injury because she proceeded to arbitration, was awarded a sum, and Defendant paid that sum of money. To the extent Plaintiff relies on a delay in her ability to proceed on the UIM claim, it is not clear what injury Plaintiff suffered as a result of the 3-week delay from December 2 to December 21, 2010, or whether she can rely on the cost of the present suit as part of the damages claimed in this case.  See, e.g., Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387 (1985) (concluding that "the allegations made concerning the expenses plaintiff incurred in presenting his claim to the defendant and in preparing and pursuing this lawsuit do not state a claim that will support legal relief").  However, the parties have not addressed that issue in the present briefing.  Similarly, to the extent that Plaintiff may be asserting a claim for punitive damages, even in the absence of any actual damages, the parties have not specifically addressed these issues in the present briefing.  The Court will therefore set this matter for a hearing and a final pretrial conference on February 19, 2015.  Prior to the hearing, Plaintiff must file a supplemental Response, setting out the specific basis for any alleged injury or damages claimed,

as well as any supporting case law. Defendant may file a reply. The Court will consider this issue further at the hearing. In addition, to the extent that there are genuine issues requiring a trial, the Court will consider scheduling issues during the February 19 hearing, including setting final pretrial deadlines and scheduling the case for trial. Therefore, the parties should be prepared to address any pretrial and trial scheduling matters, including the schedule for a pretrial settlement conference, as this matter appears suited for additional mediation prior to trial.

III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. #17] is DENIED, and that Defendant Nationwide's Cross Motion for Summary Judgment [Doc. #18] is DENIED, subject to further consideration of the question of damages, which is set for a hearing on February 19, 2015 at 9:30 a.m. in Courtroom 3 of the Hiram H. Ward Federal Building and United States Courthouse, Winston-Salem, North Carolina. Plaintiff must file a Supplemental Response by January 26, 2015, further addressing the issue of damages as noted above. Defendant may file a Reply on that issue by February 9, 2015. At the hearing, the Court will also address pretrial scheduling as noted above.

This, the 6th day of January, 2015.

                                      /s/ Joi Elizabeth Peake
                                      United States Magistrate Judge